UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTT MIKULSKI,

                Plaintiff/Appellant,

      v.                             Case No. 17-cv-820-pp

WILLIAM H. GREEN,

                Defendant/Appellee.

**ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT
AND DISMISSING APPEAL**

      Scott Mikulski filed an appeal from the bankruptcy court's May 31, 2017 judgment, which resulted from a May 16, 2017 trial in an adversary proceeding. Dkt. No. 1. Mikulski had alleged in that proceeding that the debtor/defendant, his bankruptcy attorney Attorney William Green, owed him a debt that was non-dischargeable due to defalcation under 11 U.S.C. §523(a)(4). Mikulski v. Green (_In re_ Mikulski), Case No. 16-2431-svk (E.D. Wis. Bankr.), R. 1[1]. At trial, Chief Judge Susan Kelley excluded Mikulski's evidence of how Green had allegedly mishandled Mikulski's motion to participate in the mortgage modification mediation ("MMM") program.[2] R. 35. Even without that

---

[1] The court has cited to the bankruptcy docket in 16-ap-2431 by using an "R." for the record cite. Any citation to "Dkt. No." refers to the docket in this case.

[2] The bankruptcy court for the Eastern District of Wisconsin has a program to "help qualified Chapter 13 debtors keep their homes by modifying their mortgage to an affordable payment."
https://www/wieb.uscourts.gov/mortgage-mdification-mediation

evidence, Judge Kelley concluded that Green's conduct "amounted to a gross deviation from the standards expected of an attorney in a fiduciary role, and the risk of harm to the Plaintiff was so obvious that the Debtor-Defendant must have recognized it and proceeded anyway." R. 39 at 2. She found Green's debt to Mikulski non-dischargeable, and awarded him $8,240, but denied all other claims and requests for damages, including requests for mental stress damages and punitive damages. Id. at 5.

Despite having prevailed in his nondischargeability action, Mikulski asks the court to reverse Judge Kelley's decision on two grounds: that she erred in excluding the evidence about Attorney Green's alleged mishandling of the MMM motion, and that she erred in refusing to adjourn, or continue, the trial to give him the chance to amend his complaint to include allegations about Green's alleged mishandling of the MMM motion. Dkt. No. 1. He does not seek reversal of the ruling denying him punitive damages, but says that should this court reverse the judgment, he plans to repeat his request for such damages to the bankruptcy court. Dkt. No. 3 at 1 n.1. Because Judge Kelley did not abuse her discretion, the court will affirm the judgment and dismiss this appeal.

## I.     Legal Standard

Federal district courts have jurisdiction to hear appeals from bankruptcy court orders under 28 U.S.C. §158(a). "On appeal, the district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo.*" Paloian v. Grup Serla S.A. de C.V., 433 F.R. 19, 25-26 (N.D. Ill. 2010)

(citing Monarch Air Serv., Inc. v. Solow (*In re* Midway Airlines, Inc.), 383 F.3d 663, 668 (7th Cir. 2004)).

"Th[e district] court reviews the bankruptcy court's evidentiary rulings for an abuse of discretion." Id. at 46 (citing Alverio v. Sam's Warehouse Club, 253 F.3d 933, 942 (7th Cir. 2001)). The abuse of discretion standard also governs the denial a motion for a continuance. *In re* McGrath, 451 B.R. 817, 822-23 (N.D. Ill. 2011) (citing Matter of Narowetz Mech. Contractors, Inc., 898 F.2d 1306, 1309 (7th Cir. 1990); Herzog v. Leighton Holdings, Ltd., 239 B.R. 497, 503 (N.D. Ill. 1999)). A bankruptcy court abuses its discretion when its decision is "premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." Id. (citing *In re* UAL Corp., 635 F.3d 312, 319 (7th Cir. 2011)). The court does not ask how it would have ruled, but instead asks "whether any reasonable person could agree with the [bankruptcy] court." *In re* Morris, 223 F.3d 548, 554 (7th Cir. 2000) (quoting Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 563 (7th Cir. 1984)).

## II.     BACKGROUND

### A.     The Complaint

On November 14, 2016, Mikulski field an adversary complaint against Will Green, the bankruptcy attorney who had represented him in *In re* Scott Mikulski, 13-23670-svk (Bankr. E.D. Wis.). Mikulski alleged that in 2011, his mortgage lender had obtained a judgment of foreclosure against him and planned to sell his property at a sheriff's sale. Id. at ¶7. In 2013, Mikulski hired

Green's law firm to help him because he did not want to lose his home. Id. at ¶8. Green's firm advised Mikulski to file a Chapter 13 bankruptcy. Id. at ¶10. The firm filed a Chapter 13 petition for Mikulski in December 2012. Id. While another attorney at the firm filed the Chapter 13 petition for Mikulski, id., Green took over primary responsibility for the case after the original attorney left the firm, id. at ¶11.

On May 28, 2013—about five months after the filing of the bankruptcy petition—Green filed an adversary complaint, asking the bankruptcy court to strip off the allegedly unsecured second and third mortgage liens on the property. Id. at ¶12. Green advised Mikulski that the Chapter 13 would allow him to save the house by stripping off the second and third liens. Id. at ¶13. According to the adversary complaint against him, Green settled the adversary case with the lender, agreeing on a value for the property and agreeing that the bankruptcy court would *not* treat the second mortgage as unsecured. Id. at ¶14. Mikulski says that Green did not inform him of the settlement, and entered into the settlement agreement without Mikulski's authorization. Id. at ¶15. Because Green had agreed that the bankruptcy court would not treat the second mortgage as unsecured, Mikulski alleged, he was going to have to pay down the second mortgage (partially through the Chapter 13, and eventually in full) to keep his house. Id. at ¶16. The settlement required Mikulski to amend his Chapter 13 plan, which he did. Id. at ¶17.

Meanwhile, back in May 2013 (around the time Green had filed the adversary complaint), the trustee had conducted a meeting of creditors.[3] Id. at ¶21. As the debtor, Mikulski was present at the meeting, and he says that the issue of "pay advices" had "come up" at that meeting. Id. at ¶20. "Pay advices" are proof of a debtor's income. Id. A debtor must provide the trustee with copies of such proof "with the petition or within 14 days after the" filing of the petition. L.R. 1007(d) (Bankr. E.D. Wis.). The trustee adjourned the May 2013 meeting. R. 1 at ¶20. While Mikulski didn't say so, the court assumes that part of the reason for the adjournment was because the trustee did not have the required pay advices. Mikulski says he relied on Green to tell him what documents he needed for the bankruptcy, including pay advices, and to advise him of the deadlines for providing such documents. Id. at ¶21. He asserts that between the May 2013 meeting of creditors and October 2013, Green neither followed up with him nor took any action to provide the trustee with the pay advices. Id. at ¶22. Mikulski says that he could have provided such proof, but that Green never asked him to. Id. at ¶23.

The bankruptcy court did not confirm the amended Chapter 13 plan Mikulski filed following the settlement. Id. at ¶18. In fact, the court ended up dismissing the Chapter 13 altogether in October 2013, because the trustee never received the required pay advices. Id. at ¶¶19, 24.

---

[3] Section 341 of the Bankruptcy Code requires the trustee to conduct such a meeting; the debtor must be present, and creditors may attend if they choose to do so. 11 U.S.C. ¶341.

Mikulski alleged that after the court dismissed the Chapter 13 petition, Green agreed to file a Chapter 7 petition "so Mikulski would avoid losing his house."[4] Id. at ¶24. On April 30, 2013, Green filed a Chapter 7 petition; three weeks later, he moved to convert to a proceeding under Chapter 13. Id. at ¶¶26, 27. Green did not, however, file a motion asking the court to continue the automatic stay.[5] Id. at ¶30. The automatic stay expired, according to Mikulski, making it possible for the lender to try to sell the house. Id. at ¶31. So on August 19, 2014, Mikulski filed his own motion to dismiss the Chapter 13 case, id. at ¶32; the court granted the motion, and held a hearing where it found that Green had failed to "prosecute the action" (presumably, failed to take actions necessary to protect Mikulski in the second Chapter 13), id. at ¶33. Mikulski hired new counsel, who filed a third Chapter 13 petition. Id. at ¶34. He says that since then he has been making "minimal payments to keep his house but may not be able to save his house in the long run." Id. at ¶35.

Mikulski then filed a nondischargeability adversary complaint under §523(a)(4) (defalcation), claiming that Green had breached his duties of care

---

[4] It is not clear whether Green told Mikulski that filing a Chapter 7 petition would keep him from losing his home. In Chapter 7, the trustee liquidates assets to pay creditors; it is the Chapter 13 process that allows debtors to retain assets such as houses and cars while they pay other debts over time.

[5] Section 362(c)(3) of the Bankruptcy Code provides that if a debtor has had a previous case dismissed within the one-year period preceding the filing of his petition, the automatic stay that protects the debtor against collection efforts "shall terminate with respect to the debtor on the 30th day after the filing of the later case." 11 U.S.C. §362(c)(3)(A). The debtor, however, may file a motion within that thirty-day period, asking the court to extend the stay, and the court may extend the stay if the debtor proves that he filed the second case in good faith. 11 U.S.C. ¶362(c)(3)(B).

and loyalty by failing to take certain actions. Id. at ¶¶36-48. Specifically, Mikulski accused Green of "failing to properly assess and evaluate whether Mikulski's second and third mortgages would be able to be stripped in a 13; by not advising Mikulski accordingly; by agreeing to the Settlement without seeking Mikulski's authorization; by failing to advise Mikulski on when and how to provide 'pay advice,' by failing to obtain an extension of the automatic stay to prevent the creditor from proceeding with the foreclosure sale," id. at ¶38, and by failing to communicate with him about the bankruptcy or the terms of the settlement, id. at ¶¶39, 40. Mikulski claims he was damaged by the increased debt that resulted from the settlement requiring him to pay the second mortgage. Id. at ¶48.

B.     The Motion to Dismiss

During the pretrial conference, Judge Kelley expressed concerns regarding whether an attorney qualified as a fiduciary under §523(a)(4) and whether legal malpractice rose to the level of fraud in a fiduciary capacity. R. 5 at 3:47-4:24. On March 20, 2017 (after the close of discovery), Green filed a Rule 12(b)(6) motion to dismiss the complaint, citing those grounds, and asked for an award of costs and fees. R. 17-1.

The court denied Green's motion on March 20, 2017. R. 20. The court found that Mikulski's complaint stated a plausible claim that Green may have acted with more than mere negligence, based on the allegation that he entered into a settlement without Mikulski's consent. R. 20 at 4. At the same time, the court found the other allegations to be less than persuasive:

Although Mikulski concedes that he could not make the payments on the mortgages, he complains that Green caused Mikulski's Chapter 13 case to be dismissed by failing to advise Mikulski of the necessity to provide pay advices. But Mikulski attended meetings with the Trustee and received copies of pleadings referencing the pay advice requirements, and apparently never followed up with Green. Under the circumstances, the court does not deem the dismissal of the case for failing to provide pay advices evidence of Green's defalcation. Similarly, Green's failure to file a motion to extend the automatic stay in Mikulski's subsequent case did not adversely affect Mikulski, and Green refunded his fees for the case in which he failed to file the motion.

The complaint alleges that Mikulski has been damaged by the increased debt from the settlement. But the record shows that Mikulski filed a new Chapter 13 case, and, represented by new counsel, he has succeeded in stripping both the second and third mortgages by default. It is therefore unclear what, if any, Mikulski's damages are. Moreover, Green's conduct here (stipulating to the appraised value of Mikulski's house allegedly without consulting Mikulski) does not remotely approach the conduct in the <u>Jarhling</u>[6] case. Mere negligence is not sufficient to show defalcation.

R. 20 at 4-5 (citations omitted).

C.     The Trial

Two weeks before trial, Mikulski filed exhibits relating to the mortgage modification mediation program. R. 26. These exhibits included a motion to have Mikulski pay reduced mortgage payments under the MMM program while trying to modify his foreclosure (R. 26-19), the bankruptcy order denying the MMM motion because Green had been unable to find counsel for the creditor (R. 26-16), an objection to Mikulski's Chapter 13 plan filed by the Wells Fargo

---

[6] <u>In re</u> <u>Jahrling</u>, 816 F.3d 921 (7th Cir. 2016), in which the Seventh Circuit found an attorney's conduct to be a gross deviation from the standard of conduct for an Illinois attorney, and concluded that the attorney had committed defalcation of his fiduciary duty to the debtor.

attorney on May 15, 2013 (R 26-20), and a letter Green wrote to the bankruptcy court saying he expected the creditor to respond to the MMM motion soon (R. 26-17). Mikulski also filed a witness list identifying his own testimony "about lack of information provided and failure to appropriately handle motion seeking mortgage modification mediation." R. 25 at 1.

During the May 16, 2017 trial, Mikulski began to testify about the MMM program. Green's lawyer objected, arguing that Mukulski had not raised that issue in the complaint. R. 35 at 21:37.[7] Judge Kelley reminded the parties that she had ruled on the issues for trial, and that the trial was about the settlement. R. 35 at 22:01-22:23. Mikulski's attorney argued that the MMM issue related to Green's representation of Mikulski, and asserted that he did not have to plead every breach of fiduciary duty. R. 35 at 22:23-23:20. The court reviewed the complaint, and noted that the entire case was about lien stripping, settlement and pay advices—not Mikulski's participation in the MMM program. Id. at 27:56-28:34. Mikulski's attorney then asked for a continuance of the trial, and for leave to amend the complaint. Judge Kelley adjourned to review the record, and when she returned to the bench, ruled that

> [t]he issue is whether the trial should be adjourned and the complaint be permitted to be amended to state new facts that were not pled in the original complaint regarding additional deficiencies that the plaintiff claims were committed in his bankruptcies. The answer is no; we will not be adjourning the trial. There will not be

---

[7] While the appeal challenges a ruling Judge Kelley made during the adversary trial, Mikulski failed to provide the court with any citation to the audio recording of that trial, which is on the bankruptcy court docket. The court had to locate the ruling, which began at the thirty-minute mark of the four-hour audio recording.

an amendment at this late date. The claims were vetted by a motion to dismiss. The court considered the complaint, issued an order on the motion to dismiss. An answer to that could have been "let me amend my complaint and add some new facts." That didn't happen. Now we are here. We are focused on this one set of facts. At this point of the game, everyone should know what is being tried. The claim as I understood it from the complaint and expressed in the order of dismissal, was whether the failed attempt to lien strip and the settlement without Mr. Mikulski's authority was a defalcation in a fiduciary capacity. That is what we are here to try. The testimony and the exhibits about the MMM program will not be admitted.

Id. at 30:01-31:54.

Mikulski's attorney argued, for the record, that Green should have to show prejudice in opposing the amendment under Federal Rule of Bankruptcy Procedure 7015 and Federal Rule of Civil Procedure 15. Id. at 32:00-32:30. According to Mikulski's attorney, the defense had conducted no discovery. Green's counsel responded that a continuance would prejudice the defense because Green had been waiting to speak to the IRS, and they would not speak with him until he received his bankruptcy discharge. Id. at 32:36-32:56.

Judge Kelley reminded the parties that Mikulski had filed an exclusive jurisdiction, nondischargeability complaint, and that a debtor in bankruptcy was entitled to know what the plaintiff would rely upon. Id. at 33:06-33:16. While Green could have taken discovery, he moved to dismiss and the court narrowed the scope of the claims for trial. Id. at 33:18-33:25. At that point, it was clear to everyone what set of facts would be vetted in the trial. If it wasn't clear, Mikulski should have moved to amend. Judge Kelley reminded Mikulski that the deadline for filing "these complaints" had long passed. Id. at 34:04-34:36.

At the close of trial, the court found that damages of $8,240 (representing four months of mortgage payments of $1,635 per month that Mikulski made while in the Chapter 13 case, plus $1,700 in attorney's fees paid to Green) were non-dischargeable under 11 U.S.C. §523(a)(4). The court denied Mikulski's request for punitive damages. 4:41:50-4:43:01. The court entered judgment on May 31, 2017. R. 38.

## III. ANALYSIS

### A. Exclusion of Evidence Regarding Alleged Mishandling of MMM Program

Mikulski asks this court to reverse Judge Kelley's ruling excluding any evidence regarding Green's alleged mishandling of the MMM motion. Dkt. No. 3 at 1. He argues that even though he won the adversary proceeding and succeeded in having Green's debt to him declared nondischargeable, Judge Kelley's ruling excluding evidence about Green's mishandling of the MMM motion "kept [him] from receiving greater compensatory damages necessary to make him whole . . . ." Dkt. No. 3 at 2. Green responds that Mikulski cannot meet his burden, which Green claims is to demonstrate that the court abused its discretion by making a "clear showing" that the ruling "resulted in actual and substantial prejudice." Dkt. No. 5 at 2 (citing Gile v. United Airlines, 95 F.3d 492, 495 (7th Cir. 1996)).

#### 1. *Failure to Plead the MMM Issue in the Adversary Complaint*

While admitting he did not raise the issue of Green's alleged mishandling of the MMM motion in the complaint, Mikulski argues that he was not required

11

to plead specific facts in the complaint. Dkt. No. 3 at 4 (citing <u>Wright v. Brito</u>,[8] 17-cv-64-pp (E.D. Wis.) at dkt. no. 12, p. 2) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). He cites Fed. R. Civ. P. 8(a)(2) for the proposition that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In effect, Mikulski argues that Judge Kelley ignored the notice pleading standard enunciated under Rule 8 and by the Supreme Court in <u>Twombly</u>.

The notice pleading standard requires a plaintiff to plead enough facts to state a claim that is plausible on its face but also provides the defendant with "fair notice" of the claim and its factual basis. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (citing <u>Twombly</u>, 550 U.S. at 555, and quoting Fed. R. Civ. P. 8(a)(2)). Mikulski is correct that this standard does not require a plaintiff to plead specific facts; "the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). The plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." <u>Swanson v. Citibank, N.A.</u>, 614 F.3d 400, 404 (7th Cir. 2010).

The adversary complaint alleged that Green's debt to Mikulski was nondischargeable under 11 U.S.C. §523(a)(4). Section 523(a)(4) of the Bankruptcy Code provides that any debt "for fraud or defalcation while acting

---

[8] Rather unhelpfully, Mikulski cited to "<u>Wright v. Brito</u> (ED WI 2017)." That is not a full citation; the court had to search its database for the names of the parties to find this case, then search the docket of that case to find any order which may have contained the proposition Mikulski cited.

in a fiduciary capacity, embezzlement, or larceny" is not dischargeable. 11 U.S.C. §523(a)(4).

While the statute provides relief for debts that result *either* from fraud *or* defalcation in a fiduciary capacity, the adversary complaint specifically alleged defalcation. Mikulski put the word "Defalcation" in parentheses under his description of the claim. R. 1 at p. 5. He alleged that Green's failures constituted "defalcation." Id. at ¶47. In 2013, the Supreme Court noted legal authorities had been disagreeing about what "defalcation" meant since Congress first created a defalcation exception to discharge in 1867. Bullock v. BankChampaign, N.A., 569 U.S. 267, 271 (2013). While the Bullock Court did not really define the term, it did conclude that defalcation was not "fraud in fact"—fraud which "involve[d] bad faith, moral turpitude, or other immoral conduct"—but that it did "require[] an intentional wrong." Id. at 273 (citing Neal v. Clark, 95 U.S. 704, 709 (1878)). The Court included in "intentional wrong "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." Id. at 274. The allegations in a defalcation complaint must be sufficient to put a defendant on notice that the plaintiff is accusing him of intentionally doing something wrong, or of "'consciously disregard[ing] (or [being] willfully blind to) 'a substantial and unjustifiable risk' that his conduct [would] turn out to violate a fiduciary duty." Id. (citing ALI, Model Penal Code §2.02(2)(c), p. 226 (1985)). The risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to

13

him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." Id. "[D]efalcation, unlike fraud, 'may be used to refer to *nonfraudulent* breaches of fiduciary duty." *In re* Jahrling, 816 F.3d 921, 925 (7th Cir. 2016) (quoting Bullock, 569 U.S. at 274)).

The complaint provided a list of things Green allegedly did to commit defalcation: he didn't properly assess whether Mikulski could strip the second and third mortgages in a Chapter 13 proceeding; he did not "advise Mikulski accordingly;" he agreed to settle the lien-strip adversary without getting Mikulski's authority to do so; he did not give Mikulski advice about when and how to provide pay advices; he did not file a motion to extend the automatic stay in the second bankruptcy case; he did not communicate with Mikulski about the bankruptcy case; and he did not tell Mikulski about the terms of the settlement of the lien-strip adversary. R. 1 at ¶¶38-40. Without any allegation that Green botched the MMM proceedings, was this enough to give Green notice that Mikulski was accusing him of committing defalcation? Under the notice pleading standard, the court believes it probably was. So perhaps the notice pleading standard did not require Mikulski to specifically refer, in the complaint's list of errors, to Green's alleged mishandling of the MMM motion.

But the issue before *this* court is whether Judge Kelley abused her discretion in finding that because Mikulski didn't make that specific reference in the complaint, she was not going to allow him to testify about the botched MMM motion at the trial. The issue is not how Judge Kelley *could* have ruled,

or how another court *might* have ruled; it is whether a reasonable person could agree with her ruling. The court concludes that a reasonable person certainly could have agreed with Judge Kelley's ruling.

Mikulski alleges that on April 30, 2013[9], he asked the bankruptcy court to allow him to modify his Chapter 13 plan; he said the modification would adversely affect only one creditor—Wells Fargo, which held the first lien on his house. Dkt. No. 3 at 7, citing R. 26-4, 26-21. The motion to amend the plan indicated that Mikulski hoped to deal with the arrearage on that first mortgage by obtaining a modification of the terms of the Wells Fargo loan through the MMM program. Id., citing R. 26-1. The motion to participate in the MMM plan was dated May 16, 2013—about two weeks later. R. 26-19; see also *In re Mikulski*, Case No. 13-23670-svk (Bankr. E.D. Wis.), dkt. no. 21. Mikulski asserts, however, that Green did not serve the MMM motion on Wells Fargo, and alleges that he "misled the Court about the status of the motion." Dkt. No. 3 at 7. Mikulski says that Judge Kelley's order (presumably the one denying him the ability to participate in the MMM plan)[10] "said that Green had represented to the Court that he could not locate the attorney for Wells Fargo; but Wells Fargo already had appeared in the bankruptcy case, and the motion to modify the bankruptcy plan noted that a copy of the proposed modification had been served on Wells Fargo." Id. (citing R. 26-21). Mikulski alleges that

---

[9] Mikulski lists all the dates relating to the MMM proceedings as having occurred in 2017, dkt. no. 7 at 7. The bankruptcy court docket shows that they took place in 2013, during the pendency of the first Chapter 13 case. *In re Mikulski*, Case No. 13-23670.

[10] *In re* Mikulski, Case No. 13-23670 at dkt. no. 30.

"[l]ater, Green represented to the Court that he simply had to work out title issues before the motion would be accepted or responded to," and asserts (without citing to the record) that "[t]his, too, was incorrect," but that he couldn't elicit testimony to that effect at trial because of Judge Kelley's evidentiary ruling. Id.

These arguments amount to an allegation that Green lied to the bankruptcy court about not being able to figure out who represented Wells Fargo, misled the court (and Mikulski) about having served Wells Fargo with the motion, and lied about why Wells Fargo hadn't responded to the motion. That sounds more like an allegation that Green deliberately committed fraud on the court. Indeed, in his reply brief before this court, Mikulski asserts that Green "l[ied] to a court." Dkt. No. 8 at 3.

Rule 9(b) of the Federal Rules of Civil Procedure (which is applicable in bankruptcy proceedings under Fed. R. Bankr. P. 7009) says that fraud claims, unlike other claims, must be pled with particularity. At a minimum, a plaintiff must include "the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992) (quoting Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990)).

In her ruling excluding the evidence regarding Green's handling of the MMM motion, Judge Kelley explicitly stated that "the claim as [she] understood it from the complaint and expressed in the order of dismissal, was whether the

16

failed attempt to lien strip and the settlement without Mr. Mikulski's authority was a defalcation in a fiduciary capacity. That is what we are here to try." R. 25 at 30:01—31:54. She noted that both parties had had the opportunity, through the motion to dismiss, to clarify the issues for trial. She noted that Mikulski could have asked earlier in the process to amend the adversary complaint to add the MMM allegations, but that he hadn't. The court finds that a reasonable person could have agreed with Judge Kelley that it would not be fair to require Green to defend against allegations that amounted to fraud, when the only "notice" he had that he'd be required to do so was Mikulski's trial exhibits.

Mikulski argues that the heightened pleading standard under Fed. R. Civ. P. 9 did not apply, because he alleged only defalcation. Dkt. No. 8 at 3. He says he did not sue Green for fraud, and because defalcation isn't the same thing as fraud, the heightened pleading standard didn't apply. Id. Even assuming that Mikulski is right, and that the Rule 9 heightened pleading standard doesn't apply in defalcation cases, it was not unreasonable for Judge Kelley to construe Mikulski's arguments about Green's handling of the MMM motion as requiring more notice than Green was given.

Further, Mikulski's arguments shift the burden from him, as plaintiff, to give the defendant notice of the issues for trial, arguing instead that Green should have anticipated that he would raise the MMM issue at trial based on the exhibits Mikulski filed two weeks before trial, dkt. no. 8 at 5; Green should have objected to the exhibits regarding MMM before the trial, id.; and Green should have moved to dismiss if he thought the complaint did not comply with

Rule 9(b), id. at 3. Mikulski argues that even if Green had no idea that he was going to raise the MMM issue, once Green saw the exhibits and the description of Mikulski's proposed testimony, he was "on notice that Mikulski intended to present evidence of Green's failures on the MMM issue as part of the broader breach of fiduciary duty claim." Dkt. No. 3 at 5. He says that at that point, Green could have asked to conduct discovery on the MMM issue, or could have filed a motion *in limine* to bar presentation of evidence relating to the issue—or even just prepared to defend the issue. Id. He argues that Green testified at the trial, had his file with him and was represented by an attorney from his own firm; Mikulski says that Green did not give the court any reason why he couldn't address the MMM evidence. Id. at 6.

Judge Kelley's ruling excluding the evidence shows that she believed that it was *Mikulski's* burden to give Green notice that he intended to try this issue, not *Green's* burden to figure that out. A reasonable person could agree with that conclusion, particularly because some of Mikulski's arguments don't make sense. He argues that Green should have moved to dismiss the complaint if Green believed it didn't comply with the heightened pleading standards of Rule 9(b); that argument begs the entire question. How could Green have filed a motion to dismiss Mikulski's allegations that Green had lied to, or misled, Judge Kelley about the MMM motion when Mikulski had not made those allegations in the complaint? He argues that Green could have objected to the MMM exhibits prior to trial, or filed a motion *in limine* to exclude them. That's true, but Green *did* object to admission of the exhibits. He just objected in the

middle of trial, rather than before. The court understands that perhaps if Judge Kelley had made her ruling before trial, rather than during, Mikulski might have had more success on a motion to adjourn the trial. Maybe. But that is speculation. He argues that Green testified at trial, had his file with him and was represented by a lawyer from his firm. This argument implies that Judge Kelley should have paused the trial to require Green to comb through his file with his lawyer to refresh his recollection about something that had happened years before. A reasonable person could agree with Judge Kelley's decision not to do that.

The court concludes that Mikulski has not his burden of showing that a reasonable person could not have agreed with Judge Kelley's decision to exclude the MMM evidence. Because Mikulski has not demonstrated that Judge Kelley abused her discretion, the court will affirm her ruling excluding the evidence regarding Green's handling of the MMM motion.

B.    Denial of Motion to Continue Trial

Mikulski also argues that Judge Kelley abused her discretion when she refused to adjourn the trial to allow him to amend his complaint to add the MMM allegations.

As already noted, the same abuse-of-discretion standard applies to this decision. The Seventh Circuit has held it will reverse a lower court's denial of a continuance only for abuse of discretion "and a showing of actual prejudice." United States v. Miller, 327 F.3d 598, 601 (7th Cir. 2003) (citing United States v. Avery, 208 F.3d 597, 601 (7th Cir. 2000)). The court has noted that

"generally, the common thread in rare cases that reverse the denial of a continuance is the existence of changed circumstances to which a party cannot reasonably be expected to adjust without an extension of time." Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1384 (7th Cir. 1993) (quoting Daniel J. Hartwig Assoc., Inc. v. Kanner, 913 F.2d 1213, 1222-23 (7th Cir. 1990)).

Green's actions in relation to the MMM program took place in 2013— several years before Mikulski filed the adversary complaint in 2016. The documents relating to the MMM motion were on the public docket in the original Chapter 13 case. Mikulski did not explain to Judge Kelley, nor has he explained to this court, why he could not have included the MMM allegations in the adversary complaint.

Mikulski argues that because he couldn't participate in the MMM program, Wells Fargo did not modify the loan terms. Dkt. No. 3 at 8. He argues that this caused him to have to amend his Chapter 13 plan again, to "opt out of the MMM program (which meant no more reduced monthly mortgage payments) and try to deal with arrears (usually paid through the plan) via a direct negotiation." Id. at 7. He also asserts, with no cite to the bankruptcy court record, that "Green put into the modification [of the Chapter 13 plan] that if no agreement was reached, Mikulski would *surrender his home*; Mikulski testified at trial that he knew nothing about this proposal and would not have agreed to surrender his home." Id. at 7-8 (emphasis in the original). These allegations show how Mikulski believes he was prejudiced by Green; they do not show how he was prejudiced by Judge Kelley's denial of his request that

she continue the trial to allow him to amend his complaint. He appears to assume that if Judge Kelley had allowed him to amend the complaint, and then he had presented Judge Kelley with the evidence relating to the MMM motion, he not only would have won the trial (as he did anyway), but that Judge Kelley would have awarded him more in compensatory. Dkt. No. 3 at 2 ("the Bankruptcy Court made one evidentiary ruling which kept Mikulski from receiving greater compensatory damages necessary to make him whole . . . ."). He intimates, in referencing his intent to ask Judge Kelley for punitive damages if he prevails on this appeal, that he believes she would grant that request if he could present her with the evidence about the MMM motion.

These arguments are speculative, and do not demonstrate that a reasonable person could not have agreed with Judge Kelley's refusal to continue the trial. The arguments assume that if Mikulski had made it into the MMM program, Wells Fargo would have agreed to modify the terms of his loan to reduce his monthly mortgage payments. The record in the bankruptcy court does not support this assumption; Mikulski testified that the successor law firm who filed his last Chapter 13 was successful in stripping the second and third liens but could not obtain a loan modification from Wells Fargo. R. 35 at 1:06:12-1:06:24. The argument assumes that Mikulski would have been able to pay whatever reduced payments Wells Fargo might have agreed to in a loan modification, but Judge Kelley expressed concern that there was any evidence that Mikulski could have made his payments. Id. at 3:44:59-3:45:11.

Mikulski cites <u>King v. Kramer</u>, 763 F.3d 635 (7th Cir. 2014) for the argument that Judge Kelley should have granted his motion for a continuance. He argues that in <u>King</u> the Seventh Circuit held that a plaintiff has "flexibility . . . to adjust her legal theory over the course of litigation." <u>Id.</u> at 643 (citing Fed. R. Civ. P. 15(a)(2)). While Mikulski quotes the <u>King</u> court accurately, that case does not stand for the proposition that a district court must grant a request for continuance, and a request to amend a complaint, *in the middle of trial*. Flexibility over the course of litigation is one thing; flexibility in the middle of trial is another. Rule 15(a)(2),[11] on which the <u>King</u> court relied, allows a party to amend pleadings with the court's leave, and says that the court "should freely give leave when justice so requires." A reasonable person could agree with Judge Kelley that justice does not require a court to grant a plaintiff leave to amend the complaint in the middle of a trial.

Finally, even in cases where a court has discretion, a court that "gives 'insufficient reasons' for its equitable decision abuses its discretion." <u>King</u>, 763 F.3d at 643 (citing <u>Dubicz v. Commonwealth Edison Co.</u>, 377 F.3d 787, 792-93 (7th Cir. 2004)). But Judge Kelley explained why she was not granting the request to adjourn—in the five months since Mikulski had filed his complaint, she'd vetted the claims in a motion to dismiss, and Mikulski never had sought to amend to add claims after she ruled on that motion. She also had before her Green's argument that a continuance would prejudice him, because he could

---

[11] Fed. R. Bankr. P. 7015 makes Fed. R. Civ. P. 15 applicable in adversary proceedings.

not resolve his tax issues until after he received his bankruptcy discharge. R. 35 at 32:36-32:56.

The court concludes that Mikulski has not met his burden to prove that Judge Kelley abused her discretion in refusing to grant his request to continue the trial and amend his adversary complaint.

## IV.    CONCLUSION

The court **AFFIRMS** the decision of the bankruptcy court. The court **DISMISSES** this appeal.

Dated in Milwaukee, Wisconsin this 25th day of September, 2018.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge